UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BURTON KRAUS,
individually and on behalf of all others similarly situated,

      Plaintiff,

  -against-

SNOW TEETH WHITENING LLC d/b/a SNOW,
FORESOLD LLC d/b/a/ FORESOLD, JOSHUA
ELIZETXE, FLOYD MAYWEATHER, and ROBERT
JAMES GRONKOWSKI,

      Defendants.
------------------------------------------------------------------------X

Case No. 20-cv-6085

**CLASS ACTION**
**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Burton Kraus, on behalf of himself, individually, and on behalf of all others similarly situated, by and through his attorneys, Mintz & Gold LLP, for his complaint against Snow Teeth Whitening LLC d/b/a Snow, Foresold LLC d/b/a Foresold, Joshua Elizetxe, Floyd Mayweather, and Robert James Gronkowski (collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is a class action seeking to recover money damages resulting from Defendants' fraudulent, false, and misleading advertising and marketing of their at-home teeth whitening products. Defendants have recently even sought to extend their fraud to suggest their products could offer protection from the COVID-19 virus. Defendants unjustifiably charge over a hundred dollars more than arguably comparable products based on their false claims that the lights they sell to consumers will dramatically improve the whitening power and antiviral or antiseptic qualities of Defendants' accompanying products. In reality, Defendants' lights are ineffective for those purposes and are very cheap lights that are similar to models sold online for less than five dollars.

2. Defendants have engaged in a wide-spread fraudulent scheme to deceive consumers into buying their teeth whitening products. While Defendants unequivocally claim that their teeth whitening light delivers amazing results, independent lab testing proves that, in fact, their light does nothing to enhance their product's purported ability to whiten teeth.

3. Demonstrating greed and a complete disregard for human decency, Defendants even seek to profit from the false suggestion that their products will protect customers from the deadly COVID-19 virus. One such advertisement falsely suggests that *blue led light* and hydrogen peroxide will protect consumers from germs and bacteria.

4. Defendants also have other advertisements referencing the COVID-19 quarantine suggesting that a *red light* "option" will prevent infection.



5. Upon information and belief, there are no studies suggesting that an overpriced blue or red led light materially improve the antiseptic qualities of hydrogen peroxide. Certainly, Defendants' advertisements and public statements do not cite to any.

6. Defendants have falsely claimed that their wired teeth whitening light product is patented or patent-pending and approved by the Food and Drug Administration ("FDA").

7. Defendants have also simply fabricated awards and accolades from well-known publications, when they have won no such awards or received such accolades.

8. Their lies are so brazen they falsely claimed to have customers in **over 200** countries around the world, yet there are not even 200 countries in the world.

9. A complaint filed with the Better Business Bureau sums up Defendants' practices and products well:

> I have contacted this company by phone and apparently their main customer service line has been out of order for more than a week. I sent them an email to let them know that I am not happy with the results of using their product and they have not responded to my message. Then, I went online and found other similar complaints about this company which prompted me to contact the BBB. (https://www.highya.com/snow-teeth-whitening-reviews) While their website and the testimonials are quite impressive (https://www.trysnow.com/), after reading the reviews from highya.com and not being able to reach them by phone, **I was very concerned that this was a sophisticated SCAM.** They have several celebrities promoting their product, which is one reason I felt it was worth purchasing. I am not only troubled by how they can get away with non-existent customer service, but how easily they can use what appear to be professional testimonials to make such a shoddy product appear to be high quality.

10. Defendant and Snow founder Joshua Elizetxe has boasted that he wants "complete domination," and by his and his company's acts, he has proven that he will scam the public to achieve his vision of market domination.

## THE PARTIES

11. Plaintiff Burton Kraus ("Plaintiff") is a resident of Suffolk County, New York, who purchased and received Defendants' product in New York.

3

12. Defendant Snow Teeth Whitening LLC ("Snow") is an Arizona limited liability company, with its principal place of business located at 4340 East Indian School Road, Suite #21-216, Phoenix, Arizona 85018.

13. Upon information and belief, Defendant Foresold LLC ("Foresold") is an Arizona limited liability company, with its principal place of business located in Phoenix, Arizona.

14. Upon information and belief, Snow is a wholly-owned subsidiary of Foresold.

15. Upon information and belief, Defendant Joshua Elizetxe ("Elizetxe") is the founder and chief executive officer of Snow, the managing principal of Foresold, and a citizen of Arizona.

16. Upon information and belief, Defendant Floyd Mayweather ("Mayweather") is a partner in Snow and a citizen of Nevada

17. According to Elizetxe, Defendant Robert James Gronkowski ("Gronkowski") is a partner in Snow and a citizen of Massachusetts.

## JURISDICTION AND VENUE

1. The jurisdiction of this Court arises under 28 U.S.C. § 1332(d)(2), because Plaintiff and Defendants are citizens of different States, the members of the proposed are not less than 100, and the amount in controversy exceeds Five Million Dollars ($5,000,000).

2. This Court has personal jurisdiction over Defendants pursuant to CPLR 302, because Defendants are non-domiciliaries who transact business and supply goods and services within this State, who committed tortious acts within this State, who committed tortious acts outside the state causing injury to persons within the state, who regularly do or solicit business and derive substantial revenue from goods used or consumed in this State, and who should

reasonably expect their acts to have consequences within the state and derives substantial revenue from interstate commerce.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

## CLASS ALLEGATIONS

4. This action is brought by Plaintiff as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, for injunctive relief and money damages resulting from Defendants' false and misleading advertising and marketing of their at-home teeth whitening products.

5. The Class is defined as all individuals residing in New York who purchased Defendants' "The Accelerating LED Mouthpiece", the "Original", the "At-Home Teeth Whitening All-in-One Kit" (the "All-in-One Kit") or any other purchase of Defendants' wired teeth-whitening light device (collectively and individually the "Fraudulent Whitening Devices") during the applicable statute of limitations period (the "Class Period").

6. The exact number of members of the Class, as identified and described, is not known, but Defendants' own representations state that Defendants have more than 500,000 customers and one million monthly shoppers. The Class is so numerous that joinder of individual members is impracticable.

7. There are common questions of law and fact in the action that relate to and affect the rights of each member of the Class and the relief sought is common to the entire Class, namely that Defendants' advertisements and marketing materials were materially false and

misleading and that Plaintiff and the members of the Class were injured as a result of Defendants' false and misleading advertisements and marketing materials.

8. The claims of Plaintiff, who is a representative of the class, are typical of the claims of the Class, in that the claims of all members of the Class, including Plaintiff, depend on a showing of the acts and omissions of Defendants giving rise to the right of Plaintiff to the relief sought. There is no conflict as between Plaintiff and other members of the Class with respect to this action, or with respect to the claims for relief set forth in this complaint.

9. Plaintiff is the representative party for the Class and is able to, and will, fairly and adequately protect the interests of the Class. The attorneys for Plaintiff are experienced and capable litigators and have successfully represented claimants in other litigation of this nature. Of the attorneys designated as counsel for Plaintiff, Steven G. Mintz and Steven W. Gold will actively conduct and be responsible for Plaintiff's case.

10. This action is properly maintained as a class action inasmuch as the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In support of these allegations, Plaintiff alleges as follows:

**FACTUAL ALLEGATIONS**

11. Defendants advertise and sell teeth whitening products for purchase and at-home use by consumers.

12. Defendants sell their "Original" Fraudulent Whitening Device direct to consumers online at trysnow.com for One Hundred and Ninety-Nine Dollars ($199), and on sale for One Hundred and Forty-Nine Dollars ($149).

13. The "Original" Fraudulent Whitening Device includes three "wands" of teeth whitening serum and a light-emitting diode ("LED") mouthpiece.

14. Defendants previously sold a substantially similar set of products as the "At Home Teeth Whitening All-in-One Kit." Defendants may have or may currently be using other names for what are essentially the same products.

15. Numerous other companies produce, advertise, and sell at-home teeth whitening products, in direct competition with Snow.

16. For example, Crest Whitestrips and other companies' teeth whitening pens are widely available from retailers for less than Fifty Dollars ($50) per kit.

17. On his LinkedIn page, Elizetxe claims that Snow has over <u>one million</u> monthly shoppers.

18. As of March 9, 2020, on Defendants' website (https://www.trysnow.com/products/teeth-whitening-kit), Defendants falsely claim that they are selling a product "every 47 seconds". If this were true, then Defendants would be selling more than 31,500,000 products a year!

19. Upon information and belief, Defendant Gronkowski has been compensated for repeatedly promoted Defendants' products on his individual social media accounts and his "Gronknation" social media accounts.

20. Furthermore, on January 7, 2020, Gronkowski publicly announced a partnership between Snow and byte, a company that advertises and sells teeth aligning products, on NBC's The Kelly Clarkson Show.

21. Defendants claim to have "500,000 happy customers & 16,000 five star reviews." Notably, Defendants fail to reveal to the unsuspecting public that on the Home Shopping

7

Network, they have received a rating of only 2.7 out of five.  Defendants have not disclosed the number of unhappy customers such as the Plaintiff.

22. Defendant Gronkowski has also created several promotional videos for Defendants' product, including the light:



23. Defendant Gronkowski, a well-known professional football player, also allows his name to be used such that Defendants' products, including the light are advertised and sold as Gronk's Snow Teeth Whitening At Home System.



24. Upon information and belief, Defendant Mayweather, a well-known former world champion boxer, has been compensated for contributing his name and image to promote Defendants' products on social media and stars in an advertising video endorsing Defendants' product, including the light, as "the best teeth whitening kit money can buy."

25. Upon information and belief, Defendant Mayweather has contributed sports paraphernalia for promotions of Defendants' products.

26. Defendant Mayweather is so significantly involved in the promotion of the Defendants products that there was or is a plan to create celebrity inspired "Elvis," "Marilyn" and "Floyd" versions of Defendants' product.

9



27.     In an effort to sway unwary consumers, Defendants advertise that they are the "#1 most popular teeth whitening brand in the world!" However, upon information and belief, other companies, including Crest, are far more popular and have sold far more teeth whitening products than Defendants.

28.     Defendants claim, without foundation, that they have the "#1 rated teeth whitening kit in the world."

29.     In an effort to convince the public how successful Defendants are, Elizetxe claimed that Defendants' products "are being placed in over 1,500 luxury spas in China."

10

30. In addition to its own website, trysnow.com, Snow uses social media extensively to advertise Snow products.

31. On Instagram, Defendants advertise using several accounts, including @Snowteethwhitening and @Snowresults.

32. On Twitter, Defendants advertises using several accounts, including @Snowteethwhiten and @snow_whitening.

33. On Facebook, Defendants have a page for Snow Teeth Whitening that sets forth many of their false claims.

34. Plaintiff purchased a Fraudulent Whitening Device on July 28, 2020 from trysnow.com for $150.

**Defendants Misrepresent Snow's FDA Approval**

35. On or about January 16, 2019, Oprah Magazine published an article falsely stating that Snow's All-in-One Kit is FDA approved. Upon information and belief, Oprah Magazine so stated because Defendants told the magazine the FDA had approved the All-in-One Kit.

36. However, cosmetic products such as the teeth whitening products sold by Snow, are **not** subject to FDA approval.

37. The FDA never approved any of Defendants products.

38. On June 10, 2019, truthinadvertising.org published an article criticizing Snow for its use of the FDA logo.

39. After the publication of the truthinadvertising.org article on June 10, 2019, Defendants began to conceal the FDA logo in Snow advertisements.

40. On August 7, 2019, Defendants posted an advertisement for the All-in-One Kit to the @Snowteethwhitening Instagram account but covered the FDA logo with a snowflake.

41. On August 26, 2019, Defendants posted a photograph of the All-in-One Kit to the @Snowteethwhitening Instagram account but cropped the lower portion of the product photograph where the FDA logo had appeared.

42. On the Twitter profile of @snow_whitening, as of December 14, 2020, Defendants claimed that Snow is FDA approved.

43. As of December 14, 2020, the feed of the @Snowteethwhiten Twitter account included advertisements of the All-in-One Kit that contain the FDA logo.

**Defendants Misrepresent the Effectiveness of Snow's Technology**

44. Defendants falsely claim that their teeth whitening serum is proprietary, yet there is nothing proprietary about it–it is simply a mix of two types of peroxide, hydrogen and carbomide.

45. Defendants absurdly claim their products cause no teeth sensitivity, yet they sell a product they call the "Add On For Sensitive Teeth" (also called the "Desensitizing Serum") to reduce sensitivity that may result from use of their products.

46. Defendants claim that their product works five times faster than whitening strips, while also claiming that most customers see results within three days. In fact, there are whitening strips that provide noticeable results within only two hours, and Defendants' product does not provide such fast results.

47. In October 2019 on trysnow.com, Defendants claimed that the All-in-One Kit has a patent-pending LED mouthpiece that accelerates the teeth whitening process.

48. However, independent laboratory testing performed on Defendants' teeth whitening products reveals that Defendants' LED mouthpiece produced <u>no material added</u>

<u>benefit</u> in terms of speed or effectiveness of whitening when compared with using Snow's whitening serum alone.

49. Put differently, independent lab testing revealed that Defendants are lying to consumers by suggesting that their expensive light will accelerate whitening results, when in fact it does no such thing.

50. On November 15, 2019, Elizetxe lied to the viewing public during an appearance on the Home Shopping Network when he falsely claimed that Defendants' teeth whitening serum contains a photo-catalyst.

51. A photo-catalyst is an ingredient that accelerates teeth whitening when exposed to light by breaking down peroxide faster due to its interaction with light. Genuine teeth whitening products utilize a light for this reason.

52. Defendants' teeth whitening serum sold on the Home Shopping Network does not contain any photo-catalyst. Their stated ingredients are "hydrogen peroxide, carbamide peroxide, glycerol, deionized water, sodium bicarbonate, carbomer, potassium nitrate, peppermint oil," none of which is a photo-catalyst.

53. Defendants lies are so brazen that they falsely claim on their website that "Snow® is the only formula engineered to react to the LED technology to accelerate whitening." Not only is Defendants' product not formulated to react to light to accelerate whitening, competitor products are in fact clinically proven to react to light and accelerate the whitening process. ([https://www.trysnow.com/pages/snow-teeth-whitening-kit-special-offer](https://www.trysnow.com/pages/snow-teeth-whitening-kit-special-offer))

54. Consumers could purchase whitening strips or whitening pens from numerous competitors for under $50, even under $40 or $30.

55. Thus, Defendants are charging consumers $100 more than arguably comparable products for a light that does nothing with respect to teeth whitening.

56. Yet Defendants tell consumers that their LED light device "accelerates" the whitening process.

57. Upon information and belief, the LED light included with Defendants' Fraudulent Whitening Devices can be purchased on Alibaba.com for a mere fraction of the price Defendants' charge customers to purchase their Fraudulent Whitening Devices.

58. Defendants go so far as to falsely claim that their Fraudulent Whitening Devices will work 100% of the time, yet it is a scientific fact that there are teeth that cannot be whitened.

**Defendants Misrepresent Snow's Awards and Recognition**

59. In December 2019, Defendants claimed through Snow's various social media accounts that Snow was awarded "Allure's Best of Beauty Award for 2019"; Defendants' announcement incorporated the logo of Allure magazine.

60. However, Allure magazine never awarded Snow a "Best of Beauty Award for 2019." Indeed, a visit to the Allure website reveals that Allure awarded its Best of Beauty Award for teeth whitening to another company's product and not Snow.

61. Furthermore, in December 2019 on trysnow.com, Defendants claimed that the All-in-One Kit was regarded as a "Favorite Product" in Marie Claire, People, Elle, and Good Housekeeping magazines.

62. Upon information and belief, none of these publications has deemed the All-in-One Kit a "Favorite Product" or given it or Snow any other similar recognition.

63. Defendants further claim that their Fraudulent Whitening Devices are patented, but according to the United States Patent and Trademark Office, no patents have been granted for Defendants' Fraudulent Whitening Devices.

**Defendants' Other Misrepresentations to Consumers**

64. Defendants claim that they have "spent 3 years and over $2.3 million in Research & Development to invent the BEST All-in-One Teeth Whitening System." Upon information and belief, both of these claims are false, and Defendants do not have any clinical trials to support their claims.

65. Elizetxe falsely claims that his white teeth are the result of using Defendants' products, but he has veneers, a fact he hides from consumers.

66. Defendants have even been willing to try to take advantage of the worldwide COVID-19 pandemic by referencing the pandemic and suggesting that their lights offer protection from "germs" and suggest the "red light option" as if it had some superior germicidal quality over their blue light or even no light.

## FIRST COUNT
*Deceptive Acts and Practices in Violation of New York General Business Law § 349*
(On Behalf of Plaintiff and the Class)

67. Plaintiff repeats and re-alleges each of the allegations in the preceding paragraphs as though fully set forth herein.

68. Defendants have falsely claimed that (i) their LED light enhances and accelerates their product's ability to whiten teeth, (ii) their Fraudulent Whitening Devices are patented or patent-pending and FDA approved, (iii) their products are award winning by Allure, (iv) they sell a product every 47 seconds, (that their LED Light provides additional antiviral or antiseptic qualities), and numerous other false claims.

69. Defendants have incorporated these false claims and misrepresentations into their advertising and marketing materials, which they have directed at consumers, including Plaintiff and the members of the Class.

70. Defendants' advertisements and marketing materials thus were and are materially misleading.

71. But for Defendants' materially misleading advertisements and marketing materials, Plaintiff and the members of the Class would not have purchased Defendants' All-in-One Kit.

72. Plaintiff and the members of the Class were damaged by these false claims because they could have purchased competing teeth whitening products for at least $100 less and achieved the same or better results.

73. Accordingly, Plaintiff and the members of the Class are entitled to recover damages in an amount to be determined at trial, but in no event less than One Hundred and Forty-Nine Dollars ($149) <u>each</u>, plus interest, costs and reasonable attorneys' fees.

## SECOND COUNT
*False Advertising in Violation of New York General Business Law § 350*
(On Behalf of Plaintiff and the Class)

74. Plaintiff repeats and re-alleges each of the allegations in the preceding paragraphs as though fully set forth herein.

75. Defendants' advertisements and marketing materials were and are materially misleading.

76. But for Defendants' materially misleading advertisements and marketing materials, Plaintiff and the members of the Class would not have purchased Defendants' Fraudulent Whitening Devices.

77. Accordingly, Plaintiff and the members of the Class are entitled to recover damages in an amount to be determined at trial, but in no event less than One Hundred and Forty-Nine Dollars ($149) <u>each</u>, plus interest, costs and reasonable attorneys' fees.

## THIRD COUNT
*Breach of Express Warranty*
(On Behalf of Plaintiff and the Class)

78. Plaintiff repeats and re-allege each of the allegations in the preceding paragraphs as though fully set forth herein.

79. Defendants provided Plaintiff and the members of the Class with an express warranty in the form of numerous verbal and written affirmations of fact promising and representing that its wired teeth whitening device is patent-pending and accelerates the teeth whitening process and provides additional antiviral or antiseptic qualities.

80. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

81. These affirmations of fact became part of the basis for the bargain and were material to the transactions of Plaintiff and the members of the Class.

82. Plaintiff and the members of the Class reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Fraudulent Whitening Devices.

83. Defendants thereby breached the aforementioned express warranty, in violation of N.Y. U.C.C. Law § 2-313.

84. As a result of Defendants' breach of the aforementioned express warranty, Plaintiff and the members of the Class are entitled to recover damages in an amount to be

determined at trial, but in no event less than One Hundred and Forty-Nine Dollars ($149) <u>each</u>, plus interest, costs and reasonable attorneys' fees.

**FOURTH COUNT**
*Breach of Implied Warranty of Merchantability*
(On Behalf of Plaintiff and the Class)

85. Plaintiff repeats and re-alleges each of the allegations in the preceding paragraphs as though fully set forth herein.

86. Defendants are and were at all relevant times merchants with respect to teeth whitening products.

87. Plaintiff and the members of the Class purchased Fraudulent Whitening Devices from Defendants and, therefore, are in privity with Defendants.

88. In these transactions, a warranty that the products included in the Fraudulent Whitening Devices were in merchantable condition is implied by law.

89. Defendants' LED mouthpieces were not in merchantable condition and are not fit for the ordinary purpose for which such teeth whitening lights are used.

90. Specifically, as set forth above, Defendants' LED mouthpiece produced <u>no added benefit</u> in terms of speed or effectiveness of whitening when compared with using Defendants' whitening serum alone.

91. Moreover, Defendants' LED mouthpiece produces no greater antiviral or antiseptic effect when compared with using Defendants' whitening serum alone.

92. Defendants thereby breached the aforementioned implied warranty, in violation of N.Y. U.C.C. Law § 2-314.

93. As a result of Defendants' breach of the aforementioned implied warranty, Plaintiff and the members of the Class are entitled to recover damages in an amount to be

determined at trial, but in no event less than One Hundred and Forty-Nine Dollars ($149) each, plus interest, costs and reasonable attorneys' fees.

### FIFTH COUNT
*Unjust Enrichment*
(On Behalf of Plaintiff and the Class)

94.     Plaintiff repeats and re-alleges each of the allegations in the preceding paragraphs as though fully set forth herein.

95.     As a result of Defendants' materially misleading advertisements and marketing materials, Defendants were enriched at the expense of Plaintiff and the members of the Class, in the amount of at least One Hundred and Forty-Nine Dollars ($149) per customer.

96.     Equity and good conscience require Defendants to disgorge this amount to Plaintiff and the members of the Class.

**WHEREFORE**, Plaintiff demands, for himself and the members of the Class, judgment as follows:

A.     Injunctive relief, permanently enjoining Defendants from:

  i.     Advertising or suggesting that an LED light improves the efficacy of their whitening products;

  ii.    Falsely suggesting that an LED light improves the antiviral or antiseptic qualities of their products;

  iii    Falsely claiming that their products are patented, patent-pending, or FDA approved;

  iv.    Falsely claiming that their products have won awards or received accolades for their performance;

B.   Money damages in an amount to be determined at trial, but in no event less than One Hundred and Forty-Nine Dollars ($149) per member of the Class, plus interest, costs, and attorneys' fees;

C.   Treble damages for willful and knowing violations of GBL § 349

D.   Reasonable attorneys' fees

E.   Punitive Damages

F.   Such other further relief the Court deems just and proper.

Dated: New York, New York
December 14, 2020

>                                MINTZ & GOLD LLP
>
>
>                                By: /s/ Steven G. Mintz
>                                Steven G. Mintz
>                                Steven W. Gold
>                                600 Third Avenue, 25th Floor
>                                New York, New York 10016
>                                212-696-4848
>                                212-696-1231 (fax)
>                                mintz@mintzandgold.com
>                                gold@mintzandgold.com
>
>                                *Attorneys for Plaintiff*