UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

BURTON KRAUS,
individually and on behalf of all others similarly situated,

                              Plaintiff,          **REPORT AND RECOMMENDATION**

           v.                                 20-cv-6085 (JMA) (ST)

SNOW TEETH WHITENING LLC d/b/a SNOW,
FORESOLD LLC d/b/a FORESOLD, JOSHUA
ELIZETXE.

                            Defendants.
----------------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Plaintiff Burton Kraus ("Plaintiff"), on behalf of himself and others similarly situated, filed his First Amended Complaint ("FAC") against Defendants Snow Teeth Whitening LLC ("Snow"), Foresold LLC ("Foresold"), and Joshua Elizetxe ("Elizetxe") (collectively, "Defendants") alleging claims for false advertisements in violation of New York General Business Law §§ 349 and 350, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment. Plaintiff sought injunctive relief and monetary damages. Defendants moved to dismiss the FAC for Plaintiff's lack of Article III standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP").

      The Honorable Joan M. Azrack referred Defendant's Motion to Dismiss to the undersigned to issue a Report and Recommendation.

      For the reasons set forth below, this Court respectfully recommends that Defendant's Motion to Dismiss be granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff, an individual male, is a resident of Suffolk County, New York. FAC ¶ 11.

Defendants Snow and Foresold are limited liability companies with their principal places of business in Phoenix, Arizona. *Id*. ¶¶ 12-13. Defendant Snow is a start-up company that designs, produces, and sells teeth-whitening and other cosmetic and oral-health products. Defs.' Mot. to Dismiss, Mem. of Law at 3. Defendant Elizetxe is the Founder and Chief Executive Officer of Snow, the managing principal of Foresold, and a citizen of Arizona. *Id*. ¶ 15. Plaintiff alleges that Snow is a subsidiary of Foresold. *Id*. ¶ 14.

In July 2020, Plaintiff purchased Snow's product, At-Home Teeth Whitening All-in-One Kit ("Kit"), from Snow's website. *Id*. ¶¶ 11, 51. Plaintiff claims that Defendants misrepresented, among other things, that Snow's Kit was approved by the Food and Drug Administration ("FDA"). Plaintiff also claims that Defendants' other products including "The Accelerating LED Mouthpiece", "Original", and additional teeth whitening devices were falsely advertised with misrepresentations as to their effectiveness, usage, and technology. Plaintiff alleges that Defendants fabricated awards and customer reviews and misrepresented the widespread recognition of their products on different websites, magazines, and social media platforms. *Id*. ¶¶ 52-60, 61-75, 76-80. Plaintiff further claims that Defendants engaged celebrities including football player Robert Gronkowski and boxer Floyd Mayweather to endorse Snow's products through false advertising and testified that he relied on such celebrity endorsements to purchase his Kit. *Id*. ¶ 41; Pl. Dep. Tr. at 53.

Kyle Harris, the Vice President of Finance for Snow, averred that when Plaintiff purchased the subject Kit in July 2020, no advertisements existed that featured Gronkowski and

Mayweather.  *See* Defs.' Mot. to Dismiss, Harris Aff. ¶ 3, DE 51.  Harris further averred that the advertisements featuring Gronkowski and Mayweather ran only in October 2020, November 2020 and September 2021.  *Id*.

On April 8, 2020—more than three months before Plaintiff purchased the Kit in question—Plaintiff's lawyers sent Snow a demand letter complaining about Snow's teeth whitening products.  *See* Defs.' Mot. to Dismiss, Curran Decl., Ex. 2.  The demand letter also included a draft complaint seeking millions of dollars in damages.  *Id*.  Snow rejected that offer.  *See* Defs.' Mot. to Dismiss, Mem. of Law at 3; Pl.'s Ltr. & Draft Compl., Ex. 2, DE 51.

Defendants allege that when Snow rejected that demand, Plaintiff purchased the Product in July 2020 and filed this action in December 2020, adopting his attorneys' pre-drafted allegations as his own.  *See* Defs.' Mot. to Dismiss, Mem. of Law at 3.  Defendants allege that Plaintiff and his lawyer are long-time friends and former neighbors, and that Plaintiff purchased the product in question only after Snow rejected his lawyer's demand for millions of dollars in damages.  *Id*.; *see also* Pl.'s Dep. Tr. at 37-40; Pl.'s Ltr. & Draft Compl., Ex. 2, DE 51.

### B.  Procedural Posture

On December 14, 2020, Plaintiff commenced this action.  DE 1.  On March 12, 2021, former Defendants Gronkowski and Mayweather moved to dismiss this action.  DE 21.  Plaintiff discontinued this action against Gronkowski and Mayweather.  DE 26.  Subsequently, Plaintiff filed the FAC.  DE 23.

On August 18, 2021, Defendants filed a pre-motion letter with relevant portions of Plaintiff's deposition testimony to show that Plaintiff lacked Article III standing.  DE 43.  Plaintiff filed his response on August 25, 2021.  DE 45.  Following a pre-motion conference on October 19, 2021, the Court authorized Defendants' filing of the instant Motion.  DE 50.

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 62 (2d Cir.2012) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck—Medco Managed Care, L.L.C*., 433 F.3d 181, 198 (2d Cir.2005)); *see also Cacchillo v. Insmed*, Inc., 638 F.3d 401, 404 (2d Cir.2011) ("Generally, '[s]tanding is a federal jurisdictional question determining the power of the court to entertain the suit.'") (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir.2010)).

"[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Mahon*, 683 F.3d at 62 (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Buonasera v. Honest Company, Inc*., 208 F.Supp.3d 555, 560 (S.D.N.Y. 2016) (citations omitted); *see also Clarke v. U.S.*, 107 F. Supp. 3d 238, 243 (E.D.N.Y. 2015) ("Courts must accept as true all material factual allegations in the complaint and refrain from drawing from the pleadings inferences favorable to the party asserting jurisdiction.") (citing *Fox v. Worldwide Chauffeured Transp. of N.Y., LLC*, No. 08-CV-1686, 2009 WL 1813230, at 1 (E.D.N.Y. June 25, 2009)).

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. *Carter v. Health Port Technologies, LLC*, 822 F.3d 47, 56 (2d. Cir. 2016). When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the pleading including the

4

complaint or the complaint and exhibits attached to it, the plaintiff has no evidentiary burden. *Id.*; *see also., Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d. Cir. 2011). The task of the district court is to determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.*; *see e.g.*, *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading. *See e.g.*, *Amidax*, 671 F.3d at 145; *Robinson v. Government of Malaysia*, 269 F.3d 133, 140 n. 6 (2d Cir. 2001); *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). In opposition to such a motion, the plaintiffs would need to come forward with evidence of their own to controvert that presented by the defendant "if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems" in the assertion of jurisdiction. *Carter*, 822 F.3d at 56; *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976) (emphasis added). If the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing, then the plaintiffs are entitled to rely on the allegations in the pleading. *Carter*, 822 F.3d at 57. "However, if the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id*. Where jurisdictional facts are placed in dispute, "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Makarova*, 201 F.3d at 113 ("In resolving a

motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings.").

In the present case, Defendants support their Motion to Dismiss with evidence beyond the pleadings. *See generally*, Defs.' Mot. to Dismiss. Accordingly, this Court will review the evidence including the affidavits and Plaintiff's deposition testimony submitted by Defendants to examine whether Plaintiff has met his burden to show that he has Article III standing.

### III. DISCUSSION

#### A. Article III Standing

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Akridge v. Whole Foods Market Group, Inc.*, 20 Civ. 10900 (ER) 2022 WL 955945 at 4 (S.D.N.Y. Mar. 30, 2022); quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

##### 1. Injury

In support of dismissal, Defendants argue that Plaintiff's self-inflicted injury is insufficient to establish Article III standing because Plaintiff purchased the Kit to facilitate this litigation after Defendants rejected Plaintiff's attorney's demand for damages. Plaintiff argues that he overpaid for the subject product, which gives him standing to sue for Article III purposes.

To establish standing under Article III of the Constitution, a plaintiff must show that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent. *Akridge*, 2022 WL 955945 at 4. Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts."

*TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2206 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021). The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." *Carter*, 822 F.3d at 55; *Raines v. Byrd*, 521 U.S. 811, 818, (1997). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute...." *Id*. Any monetary loss suffered by the plaintiff satisfies this element; "[e]ven a small financial loss" suffices. *Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85 (2d Cir.2013); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy[.]" (internal quotation marks and citations omitted)).

In a false-advertising case, "the 'injury is the purchase price.'" *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017), quoting *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at 5 (S.D.N.Y. Dec. 11, 2013). This injury prong "may be satisfied through an allegation that a plaintiff overpaid for the product, or, stated differently, 'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.'" *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017), quoting *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at 23 (E.D.N.Y. July 21, 2010).

Here, Plaintiff has sufficiently alleged in the FAC that he overpaid for the Kit and that he could have purchased similar teeth whitening products in the market from other companies for a lower price. FAC ¶ 74. For example, Plaintiff alleges, among other things, that he purchased Defendants' products for $150; that "[c]onsumers could purchase whitening strips or whitening

pens from numerous competitors for under $50, even under $40 or $30;" and that "Defendants are charging consumers $100 more than arguably comparable products for a light that does nothing with respect to teeth whitening." *Id.* ¶¶ 51, 71-72.

To seek dismissal based on lack of injury, Defendants argue that Plaintiff's injury was self-inflicted because he purchased the subject product only to facilitate this lawsuit. Defendants rely on various cases to argue that Plaintiff's manufactured injury does not confer standing for Article III purposes. *See* Def.'s Mot. to Dismiss, Mem. of Law at 8. None of the cases apply here. For example, Defendants cite a few cases for the broad proposition that "'[s]elf-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing'" *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at 10 n. 5 (E.D.N.Y. Sept. 9, 2013); *Union Cosm. Castle, Inc. v. Amorepacific Cosms. USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006). Both *Taylor* and *Union Cosm.* are distinguishable as they do not relate to false advertising claims. The only case cited by Defendants that is factually analogous to the instant case is *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 816 (2007). However, *Buckland*, too, is distinguishable. In *Buckland*, the plaintiff's own declaration "establishe[d] that she did not buy [the defendant's] product due to 'mistake, coercion, or request' (Rest. Restitution, § 112), but to establish standing for an action in the public interest." *Buckland*, 155 Cal. App. 4th at 818.

Here, Defendants have submitted the draft complaint originally sent by Plaintiff's attorneys to Snow in April 2020, which was shared three months prior to Plaintiff's purchase of the subject product in July 2020, along with Plaintiff's FAC filed in December 2020. Upon a close review of the draft complaint and the FAC, the allegations appear to be nearly identical. Given Plaintiff's long-standing friendship with his attorney, it is certainly possible that Plaintiff

8

purchased Defendants' products at the behest of his lawyer for purposes of filing this lawsuit. The circumstantial evidence adduced thus far may well support such an argument. However, unlike in *Buckland*, the Plaintiff here testified during his deposition that he purchased the product for the legitimate goal of whitening his teeth, and only filed suit when he became dissatisfied with his purchase. *See* Pl.'s Dep. Tr. at 35-36, 46. In the absence of any concrete evidence proving this testimony was false, the Plaintiff has satisfied his burden at this stage of the proceeding, even if just barely. Assuming at this stage, that Plaintiff purchased the product for a legitimate purpose, any monetary loss, "[e]ven a small financial loss" suffices to show that Plaintiff suffered injury to confer standing for Article III purposes. *Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85 (2d Cir.2013); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (stating that the injury-in-fact requirement is "a low threshold," which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy[.]" (internal quotation marks and citations omitted)). Plaintiff initiated a false advertising lawsuit where the purchase price or a premium on the price of the purchased commodity suffices to show injury. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017), quoting *Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at 5 (S.D.N.Y. Dec. 11, 2013).

Thus, this Court determines that Plaintiff has adequately pled that he suffered injury to establish standing for Article III purposes.

  2. **Causation**

In support of dismissal, Defendants also argue Plaintiff has not shown that Defendants' advertisements were the cause of his injuries because he did not rely on them to purchase the

subject product. Plaintiff argues that the Defendants' false advertisements and misleading marketing materials were the cause of his injuries.

The "causal connection" element of Article III standing, i.e., the requirement that the plaintiff's injury be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court," does not create an onerous standard. *Carter*, 822 F.3d at 55; quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, (1992) (internal quotation marks omitted). For example, it is a standard lower than that of proximate causation. *Carter*, 822 F.3d at 55-56; *see also Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir.2013). A defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing. *Id*. at 91.

> As a rule, causation is shown if the defendants' actions had a "determinative or coercive effect" on the action that produced the injury. Bennett v. Spear, 520 U.S. 154, 169 (1997). Though causation is lacking if the claimed injury results from "the independent action of some third party not before the court," a plaintiff need not allege that "the defendant's actions [were] the very last step in the chain of causation" to demonstrate that the defendant's actions caused the claimed injury. Id. It suffices that the defendant's actions had a "determinative or coercive effect upon the action of someone else" who directly caused the claimed injury. Id. Thus, causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation.

*Carver*, 621 F.2d at 226 (emphasis supplied). In the context of false advertising under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Turk v. Rubbermaid Incorporated*, No. 21-CV-270 (KMK), 2022 WL 836894 at 8 (S.D.N.Y. Mar. 21, 2022) (quotation marks omitted); *see also Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-CV-8924, 2020 WL 3415252, at 3 (S.D.N.Y. June 22, 2020) ("A

10

plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." (citations omitted)).

In false advertising cases, the only way a plaintiff can show that he was injured as a result of the defendant's representations is to prove that he saw and relied on the statements at issue. See, e.g., *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (dismissing claims under 12(b)(1) for lack of standing where purchaser of "fat-burning" product could not "plausibly allege an injury traceable to" a spokesperson for the product because she bought the product before the representations in question had been made and therefore could not have relied on them in making her purchase).

Here, in the FAC, Plaintiff identified various advertisements and misleading statements allegedly made by Defendants. FAC ¶ 22. Plaintiff alleges that "[b]ut for Defendants' materially misleading advertisements and marketing materials, Plaintiff and the members of the Class would not have purchased Defendants' All-in-One Kit"; and that "[b]ut for Defendants' materially misleading advertisements and marketing materials, Plaintiff and the members of the Class would not have purchased Defendants' Fraudulent Whitening Devices". *Id*. ¶¶ 88, 93.

To seek dismissal, Defendants rely on Plaintiff's testimony to show that there was no causation or that Plaintiff's alleged injury could not be traced to Defendants' advertisements. This Court agrees. While Plaintiff's FAC identifies several allegedly false and misleading advertisements, his testimony contradicts those allegations to show that he did not see or rely on any of the advertisements before purchasing the Kit. Plaintiff admits that he neither saw any photos or videos featured in the FAC nor reviewed any mediums where the misrepresentations supposedly appeared. For example, when Plaintiff was asked whether he had seen the social

media site Instagram advertisement featured on the second page of the FAC, Plaintiff testified that he did not remember ever seeing that advertisement. FAC ¶ 4; Pl.'s Dep. Tr. at 134-35.

Plaintiff was also shown two other images from the FAC featuring Gronkowski, but he testified that he had no recollection of seeing those images prior to purchasing the Kit. FAC ¶¶ 44-45; Pl.'s Dep. Tr. at 156. Plaintiff was also shown an image of Mayweather, which he likewise did not recall seeing, and at one point in the deposition also admitted that he didn't think he could pick out Mayweather by sight. FAC ¶¶ 44-45, 48; Pl.'s Dep. Transcript at 158. When asked why he decided to include a photo in the FAC that he had never seen, he responded "[t]he attorneys, relying on them to put this all together. I did not." Pl.'s Dep. Tr. at 158.

Plaintiff also testified that he had no recollection of seeing various other supposedly key statements that the FAC attributes to Defendants. FAC ¶¶ 32-33, 35-36. For example, the FAC contains allegations regarding Defendants' false advertisements and misleading statements on LinkedIn web page, or the assertion that Snow has over 1 million monthly shoppers, 500,000 happy customers and 16,000 5-star reviews. *Id*. Plaintiff testified that he did not review or recall reading any of this. Pl.'s Dep. Tr. at 151-55.

Finally, Plaintiff also testified that he did not rely on various other mediums identified in the FAC. For example, the FAC contains allegations regarding Defendants' false advertisements and misleading statements in an article in the January 2019 issue of Oprah Magazine, Home Shopping Network series, and on a website called Truth in Advertising.org. FAC ¶¶ 52, 55, 67. However, Plaintiff testified that he did not rely on any of these mediums while purchasing Defendants' product. Pl.'s Dep. Tr. at 160-61.

Conceding that he did not see, much less rely on any of the advertisements identified

12

in his FAC, Plaintiff also testified that he saw an entirely different advertisement on Facebook, which is not identified or ever referred to in the FAC. While Plaintiff alleges in a conclusory fashion that he relied on representations on the products and on websites selling the products, these allegations are inadequate to demonstrate reliance sufficient to confer standing for Article III purposes.[1] *See, e.g., Goldemberg v. Johnson & Johnson Consumer Cos.,* 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (holding that to allege causation under the GBL, "a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased"); *Gale v. International Business Machines Corp.*, 9 A.D.3d 446, 447 (2d Dept. 2004) (affirming dismissal of the plaintiff's § 349 claim for failing to plead causation with sufficient specificity, holding that "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury.").

Given the clear dispute regarding Plaintiff's true purpose in purchasing the teeth whitening product, and the strong circumstantial evidence Defendants have presented suggesting that Plaintiff only purchased the product in order to generate this lawsuit, the complete lack of any connection between the Plaintiff's testimony and the allegations in the Complaint is even more troubling. This is particularly true since the Complaint appears to have been drafted before Plaintiff purchased the product and seemingly without any attempt to conform the allegations in the Complaint to Plaintiff's actual experience. This disconnect between the allegations in the Complaint and Plaintiff's own testimony is ultimately fatal to his claim, and I respectfully

---

[1] Specifically, Plaintiff testified that he saw a Facebook ad (which does not appear anywhere in the FAC) that included "all kinds of claims" about "light activating the gel," but did not clarify what specific claims he alleges were false, how they were false, or that he actually relied on any of these alleged claims in deciding to purchase the product.

13

recommend that the District Court find that Plaintiff has failed to adequately establish the causal connection between his alleged injury and the Defendants' conduct that is necessary to establish Article III standing.

### 3. Injunctive Relief

In support of dismissal, Defendants argue that Plaintiff's claim for injunctive relief should be dismissed because Plaintiff fails to allege any future injury. In opposition, Plaintiff requests to amend the FAC as Plaintiff recognizes that, as currently pled, his allegations only set forth a past harm and seeks to include allegations of a future harm.

"[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order); *see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Grossman v. Simply Nourish Pet Food Company LLC*, 516 F.Supp.3d 261, 274 (E.D.N.Y. 2021); quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). "Although past injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

Here, Plaintiff lacks standing to seek injunctive relief. *Grossman*, 516 F.Supp.3d at 274; *Lugones v. Pete and Gerry's Organic, LLC*, 440 F.Supp.3d 226, 238 (S.D.N.Y. 2020). Because Plaintiff failed to allege any imminent future harm, the Court concludes that Plaintiff lacks standing to seek injunctive relief. *Id*. The Second Circuit has explained that "past purchasers of a consumer product who claim to be deceived by that product's packaging ... have, at most,

alleged a past harm." *Berni*, 964 F.3d at 147. Accordingly, "past purchasers of a product ... are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Id*. Plaintiff, by his own admission, alleges past harm only. Pl.'s Opp., Mem. of Law at 15. As such, there is no risk that Plaintiff would purchase Defendants' products with the current knowledge of its products because, by Plaintiff's own allegations, these products are purportedly deceptive.

Given this court's recommendation to dismiss Plaintiff's injunctive relief, any amendment to the FAC would be futile. It is indeed the case that "a Plaintiff certainly has standing when they ... assert that they will purchase a product in the future if the ingredients are changed so that the product is not mislabeled." *Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349 at 5 (S.D.N.Y. Mar. 30, 2018). However, a more thorough survey of authority in the Second Circuit suggests that that where a plaintiff has failed to allege that he intends to use the offending product in the future, there is no likelihood of future harm. *Lugones*, 440 F.Supp.3d at 238. *Petrosino* is an outlier in the Circuit's jurisprudence. *Id*.; *See, e.g.*, *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 553 n.10 (W.D.N.Y. 2018) (collecting cases finding that conditional promises to purchase product if product is altered are insufficient to allege future injury).

Indeed, district courts in this Circuit have held that because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (citations omitted). Thus, any potential "future injury is merely conjectural or hypothetical" because even if plaintiff purchased the Products again, she would do so "with exactly the level of information" that she possessed from the outset of this

15

suit, and accordingly would not be deceived or harmed. *Berni*, 964 F.3d at 148–49; *Silva v. Hornell Brewing Co.*, No. 20-cv-756 (ARR) (PL), 2020 WL 4586394, at 7 (E.D.N.Y. Aug. 10, 2020) ("To the extent that plaintiff was deceived by the appearance of the phrase 'All Natural' on the Product label, the existence of this lawsuit shows that he is now aware that the Product contains synthetic ingredients. Thus, he will not be harmed again in the same way, and he lacks standing to seek an injunction"); *Kennedy v. Mondelez Glob. LLC*, No. 19-cv-302 (ENV) (SJB), 2020 WL 4006197, at 5 (E.D.N.Y. July 10, 2020) (recommending dismissal of claim seeking injunctive relief for lack of standing due to plaintiff's conjectural future harm based on false advertising claims on Graham cracker labels).

Thus, this Court respectfully recommends that Plaintiff lacks standing to pursue his injunctive relief claims for lack of any future injury. This Court further recommends that Plaintiff's request to amend the Complaint should be denied since any allegation of a future injury will not pose a real or immediate threat to confer standing under Article III.

## IV. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion to Dismiss be granted because even though Plaintiff has sufficiently alleged that he suffered financial injuries, Plaintiff has failed to show that his injuries were traceable to Defendants' conduct. Therefore, Plaintiff lacks standing to bring this lawsuit under Article III of the Constitution.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at 30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 15, 2022